Your Honors, may it please the Court, my name is William Escobar on behalf of the appellants. And with Your Honor's permission, I'd like to reserve two minutes for rebuttal. Okay. Your Honors, the record that you have in front of you that you will conduct a de novo review on explicitly sets forth that the parties here entered into an employment relationship, and that employment relationship was launched by a contract that contains what it refers to as terms of agreement. One of the terms of agreements in that initial contract is a broad arbitration provision that requires arbitration of any dispute, any claim of liability of any party, and any disagreement over the terms of the contract. The district court concluded that that agreement only applied to the training period. What is your argument that it does not confine to that period? Yes, Your Honor. When you look at that initial agreement, which is referred to in the subsequent agreements as the service agreement, that agreement naturally addresses training, which is the first step in this employment relationship. But it contains other provisions besides the arbitration. And, in fact, in paragraph five of that agreement, it talks about the point in time when the employee is absorbed into the workforce. And on being absorbed in the services of the division after completion of the training period, it goes on to say that each party has an obligation as to how much notice they would give the other if they were going to end the relationship. But on top of that, Your Honor, in the subsequent agreements, it's referred to the ---- Are you talking about paragraph five? Yes, Your Honor. On being absorbed in the services of the division. Okay. So it talks about the relationship. But more importantly, Your Honor, in the subsequent agreements, because what happens here is that a couple of years into the relationship on each one of these employees, they're offered the chance of going to the United States and to be deputed on assignment. They enter into other contracts that deal with issues that come up in the deputation. In those subsequent contracts, it refers back to the service agreement. And it states, for example, in the Berry addendum on the deputation at 88 of the record, it refers to the relationship. It says the employee is an employee of the employer pursuant to a service agreement entered into in India upon commencement of the employee's employment. Those subsequent agreements also contain clear and explicit provisions that say that the original service agreement remains in full force in effect and is valid. It is not limited to a training agreement only. But let's suppose, Your Honor, that the only thing that it dealt with ---- Counsel, one possibility is that the only thing that's in effect is the three months' notice and the guarantor provisions because that's the only thing left of the service agreement that hadn't already been fulfilled. Except for the arbitration provision, Your Honor. The arbitration provision, because it starts out in the initial agreement, and in the subsequent agreements there's explicit reference that the service agreement remains in full force in effect. Under the controlling law of how to look at arbitration arrangements, the court has to consider that that initial arbitration clause is effectively imported into every single subsequent agreement. Well, as to the initial agreement, I think the district court's view was, sure, you can ---- well, the district court may not have gone this far, but I gather the district court is saying, sure, you can arbitrate anything that happened during the training period about which you have a dispute, but you can't arbitrate new disputes because the arbitration clause is confined to the matters covered in the initial service agreement. What's your response to that? Well, three responses to that, Your Honor. First of all, that is completely contrary to the actual language of the arbitration clause, which says any dispute, any claim of liability. And on top of that, Your Honor, the ---- Whoa, whoa, whoa. You left some terms out there. The interpretation of any of the terms herein above contained or, and I'm reading Betachalem's paragraph 4, or any claim of liability of any part, including the sureties. Correct, Your Honor. And there's an additional provision right at the beginning. It's in the event of any dispute or disagreement over the interpretation of any of the terms herein above contained or any claim of liability. Now, the controlling law on how a court has to look at an arbitration language like this is that you have to give it the broadest possible effect. You also have to consider that if there is any reading of the language and of the contractual arrangement here, that that requires arbitration. In fact, Your Honor, even if we were to conclude that there's something vague, either in the language or in the agreements that bring this in, that has to be resolved entirely in favor of arbitration. Counsel, let me interrupt you for just a second. But don't the deputation agreements provide that TATA has the ability to litigate claims regarding the deputation agreement? Your Honor, yes. Is that then inconsistent with a position that the service agreements have an arbitration clause that says that we will arbitrate all claims and that then that follows on to the subsequent agreements, but the subsequent agreements have a clause that says that TATA can litigate certain issues, right? It does provide that, Your Honor. And, in fact, I think that underscores that all other disputes that are not covered by that specific provision remain as arbitrable disputes. And here's why. The deputation agreement, when it talks about the matter that has to be litigated, is dealing with one breach. It specifically refers to the breach of the employee not completing the deputation. And only as to that breach by the employee does the contract then provide that it should be litigated and it identifies the specific court in the United States. And there's a logic to that. The logic is the employee is now in the United States. He has continuing obligations under his entire contractual arrangement. If that employee leaves the employee in the United States and does not finish the deputation, the parties agree that as to that limited breach, there would be a litigation procedure in the United States and it sets forth the court and the law that applies. But that does not mean that the parties and that, in particular, the employer gave up its right contractually under the broad arbitration provision to have any other disputes or any other claims of liability handled in an arbitration. Well, you know, it would have been pretty easy to put that language that you're suggesting directly in the agreement so that there wouldn't be any doubt about it. Your Honor, with all my clients on which I deal with contractual issues, there's always things that I could tell them that they would do better when we're dealing with the litigation. But the fact of the matter is, and the law on this is unequivocal, Supreme Court, Ninth Circuit cases, unequivocal, that if the language in the contract is of the arbitration provision, it's susceptible to any reading mandating arbitration under the Convention and under the entire body of Federal law that has addressed this, arbitration has to be compelled. The law on that is absolutely clear. Not only that, the burden on the other side is really extremely high. It's to show that it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. And that's because of the considerable body of law here that honors arbitration agreements. Now, the arbitration clause here is broad. And in fact, one of the errors that the Court below made is in looking at that arbitration language, the Court said, as for, quote, any claim of liability of any party as to that clause, this provision is so broad and vague that it is unpersuasive as evidence that TCS intended to arbitrate disputes not directly related to the service agreement. Well, Your Honors, when an arbitration clause is found to be broad, that is a helpful thing for the party seeking to compel arbitration, because the courts have to honor that breadth to the extent that the clause is broad. I think, Counsel, you're down to about a minute, and we have – I think we've got your argument in hand. If you want to reserve some time, I don't want to cut you off. I'll keep this last minute available for that. Thank you. Mr. Rubin. Thank you, Your Honors. Michael Rubin for the plaintiffs. While there's quite a bit that I could say about the actual language of the agreements that both supports what Judge Walker concluded and that expands upon it, let me start with threshold issues of standard of review and the presumption of arbitrability that Counsel referred to. Because although I think that Your Honors' questions show that you're certainly well familiar with all the issues concerning construction and that we would prevail in this case even under the de novo standard of review that Counsel Furtado articulated, this case is better resolved under the clearly erroneous standard because, in fact, what Judge Walker did was not just review and analyze a contract based on its language as a matter of law, which would lead to de novo review by this panel, but he ascertained the intent of the parties as of the formation of the contract and thereafter by looking at a series of agreements. In the case of Plaintiff Berry, five agreements. In the case of Plaintiff Bedachilam, six agreements totaling 78 pages. In considering the extrinsic evidence, including the parties' course of dealing, he made factual determinations that underlay his determination of the parties' contracting intent. And therefore, under the cases we cited, such as Laborers' Health and Welfare Trust Fund, Rose's transfer, and many, many others, this Court must apply the clearly erroneous standard to his determination of what the parties' contracting intent was. That intent is consistent with the questions the panel has asked, that is to say that he concluded the intention was to limit this particular arbitration clause to disputes arising out of the training relationship and the guarantor surety provisions. So if there was a question that arose as to whether training had been provided for one month in one case, 12 in the other, or whether the person did in fact remain employed for TADA for the designated period, then that would be an arbitrable dispute. But as Judge Walker concluded, looking at the entire course of conduct of the parties, looking at the language of not only the initial agreement and the arbitration clause itself, but also the subsequent. Just not to interrupt, but I will. The It's an interesting point, but I'm not sure it makes any sense in terms of appellate review because you're talking about undisputed documents. And it seems to me we're really talking, and I'm familiar with the cases, but humor me for a minute. We're talking about a judge applying law to undisputed facts. So to me it seems as though we're dealing with mixed question of fact and law at best that's subject to de novo review. We aren't talking about a situation where you had live testimony and he decided who was telling the truth and what the intent was, are we? Your Honor, the case comes out the same way under either standard, under Bay Area Typographical Union number 21. This Court made clear that in those circumstances, even where there is no determination of witness credibility, you would apply the clearly erroneous standard. And Rule 52A specifically says even if you're basing it on extrinsic documentary evidence and there are no credibility determinations, nonetheless it's clearly erroneous, but I'll move on. The point is made. The presumption of arbitrability point, which was the second portion of Mr. Escobar's argument, doesn't apply at the threshold stage that we're now focused on. The Supreme Court in Mitsubishi and First Options in Waffle House and other cases have said that the threshold issue in determining a question of arbitrability is to determine the contract's meaning and scope. You apply traditional contract construction principles, and only after you determine what the parties have agreed to arbitrate do you apply any presumption of arbitrability. So if there were a dispute as to what constitutes training, then you would apply a presumption of arbitrability, and the determination were that the contract was limited solely to training issues, as Judge Walker found, then you would apply a presumption of arbitrability to determine whether that dispute fits within the party's intent and understanding. But here, as Judge Walker said, it is to a near certainty, in his words, that there was no meeting of the minds that this arbitration clause would apply to the employment relationship of the parties in a foreign country. There was no reference to the deputation in the initial contract. The reference that counsel made to the employment relationship in that addendum was to the employment relationship, quote, in the original contract. What do we do with the provisions that provide for litigation in the United States? Those seem to be pretty one-sided. And so I sort of have two questions for you. First, does the fact that they allow TADA to bring suit against their employee in the United States suggest that TADA has reserved something out of an arbitration clause? And the second question is, if that's the case, is there something unconscionable or wrong about mutual promises of arbitration which have been subject to an exception for one side that can bring litigation but not another side? There's absolutely something wrong and unconscionable, and that's the whole set of one set of alternative arguments we made as to why this is an unenforceable agreement. There were three alternative arguments that Judge Walker didn't even have to reach because of his construction of the contracting party's intent. The unconscionability factor, the absence of mutual obligation is one. As far as the reservation of the right to litigate in Maryland. Does the Court have a responsibility to try to sort of like a constitutional avoidance argument, that is, an unconscionability avoidance argument to suggest the parties would not have deliberately entered into a contract that was unconscionable for one of them and, therefore, we should construe the contract in a way that preserves a reasonable interpretation? Absolutely. It's both that principle and the principle that you can't impute an intent to enter into an unconscionable contract, particularly in an adhesive situation where one party has so little bargaining power, as is the case of the plaintiffs here. There is no indication that there was any communication to them that any dispute that arose later in the United States would have to be arbitrated. In fact, not only is this one-sided and unconscionable, not only did Tata reserve for itself the right to litigate or, in some cases, arbitrate where it wanted, but the mere fact, and I'll point the Court to service addendum paragraph 2, the mere fact that Tata reserved for itself the right to arbitrate certain disputes that arose upon breach of the commitment to return to India suggests that there wasn't a preexisting mutual obligation to arbitrate, that, in fact, as Judge Walker said, each one of these agreements addressed a different relationship between the parties, had a different set of dispute resolution principles applicable to that relationship. The initial training agreement had a self-contained arbitration clause that applied to a commitment that continued into the future for two years or three years, but was limited to the training relationship. So any position on that? Justice Alito Counsel, let me interrupt you for just a second, though. I had some concerns about the unconscionability argument. I was not able to find a case that supports the proposition that unconscionability is a defense to an arbitration clause in a case involving the Convention. In fact, the one case that stands out is a Batista v. Stark-Cruz's case, which says that it does not, that unconscionability is not a defense. Can you direct me to a case that indicates that we can apply the unconscionability defense in this case? And then, number two, as the seminal case of A&M v. Produce pointed out, you have to do a sliding-scale analysis of procedural and substantive unconscionability, and can you do that for me? Absolutely. Less than 56 seconds, and tell me how you would do that sliding-scale analysis and why it should turn out in favor of your client. Yes, Your Honor. It's now 49. The Ninth Circuit in 2008, in the case of Rogers v. Royal Caribbean Cruise Lines, noted that this Court has not yet decided the issue of whether unconscionability is a recognized defense under the Convention. Therefore, it's still an open issue in this circuit. Okay. However, if you look at cases such as Rhone-Mediterranean-Campagna v. Lara, which we cited in the brief, there are two sets of recognized defenses under the Convention. The set of conventional contract principles, such as duress, mistake, fraud, or waiver, and we would contend that unconscionability fits within them because, as the restatement second of contracts indicates, unconscionability is a well-recognized common defense to contract claims. And, as Rhone pointed out, you can also have a defense when the arbitration agreement contravenes the fundamental policies of the forum state, California being, in this instance, the forum state, California obviously recognizing unconscionability, and the non-waivable fundamental rights at issue here in this employment case being fundamental as designated by the California Supreme Court. So those are two different reasons why, if this Court were to reach the issue here, it should find that, yes, these are legitimate, well-recognized defenses to the International Convention. As far as the sliding scale is concerned, there is no dispute in Judge Walker recognized that the procedural unconscionability portion is satisfied by two factors. First of all, this is a contract of adhesion, a form contract imposed on the weaker party by the stronger party. Particularly in the employment context, there was no power to bargain, to negotiate. You see that by the fact that these two plaintiffs have virtually identical agreements in every respect down the line. Secondly, going beyond the party's expectations and creating surprise is another factor that leads to unconscionability. And this goes back to Judge Bivey's question.  beyond the expectations of the weaker party that also satisfies procedural unconscionability. Turning to substantive unconscionability, if an agreement is too one-sided, if it shows too much power or deprivation of rights in the hands of the more powerful party, then it is substantively unconscionable. We pointed out tracking the language in the unconscionability cases, including the circuits on bond decision in Nagrampa and other cases, and also citing some of the California cases, that there are more than a half dozen reasons why, given the particular rights at issue here, fundamental non-waivable rights protected by California public policy, the procedures guaranteed by the Indian Arbitration Act, which doesn't follow the Model Act. The Indian Arbitration Act are not sufficient to protect the rights of plaintiffs 8,000 miles away who are trying to assert the California and other labor law rights. Not quite 49 seconds. No, that's fine. Any further questions? No. We want to make sure everybody gets some questions. Thank you so much. Thank you. Yeah, thank you, Mr. Rubin. Mary Ann, would you put two more minutes back, a total of three minutes on the clock?  Thank you, Your Honor. First on the unconscionability issue. Your Honor is quite correct. If we scour the entire Federal law on arbitrability of international agreements subject to the Convention, the law is crystal clear. There is no defense of unconscionability anywhere. It does not exist. No, it's not crystal clear in the circuit yet. This circuit hasn't addressed that. However, every circuit that has addressed it has done detailed analysis of the Convention and pointed out that unconscionability sets you down a path of doing a number of things, of evaluating the foreign arbitral systems, other country's systems, and applying laws that even within the U.S. there are different views in different states about what's unconscionable. In one state, some contracts of adhesion are viewed that way. In other states, they are not. Should we use it as an aid to construction then? I mean, use it as an aid to construction as opposed to defeating the clause outright. No, Your Honor. And here's why. The Convention and the law construing the Convention is very clear on this. The Court has very limited jurisdiction once you have an international agreement between parties that fit that description. And once you've established the relationship that's covered by the Convention as to which there's no dispute here, once you get to that point, the Court's is extremely limited. It's to hone in on the actual arbitral language that exists in the agreement. Well, yeah, but counsel, you know, I know you didn't draft these agreements. These agreements are a mess. They're just a mess. Your Honor, you know, I've read them a number of times, and I wish I was dealing with agreements that I could tell you were crystal clear, but we're often not doing that, and perhaps we all like that because it puts us in these positions. But, Your Honor, the contracts, once you read them, if you sit down and read all the contracts and go through them, with the light and the standard of review of the contract that's required by the Convention, which is every single doubt has to be resolved in favor of arbitration, there's no dispute that that's the controlling standard on which you have to read those agreements. Well, if the initial arbitration clause were as broad as you say, and why did you need to put in a specific arbitration clause in the addendum to the security agreement as to a specific issue? It would be entirely superfluous unless the initial arbitration clause was confined to the terms of the initial contract. Because, Your Honor, when they did the deputation agreements, they're focusing on specific issues that might arise in the deputation in terms of things that might naturally happen. This is a company that deputes thousands of employees around the world. And when you have a deputation, it's entirely possible that the employee decides not to return, decides to leave, any number of reasons to breach two narrow provisions. The Convention says the Convention applies to arbitration agreements relating to any and all disputes, any and all disputes. The entire tenor of the agreements here is the parties were deciding as to every type of dispute that they could think of to decide how they would adjudicate those disputes. As to the rest of them that were not addressed specifically, you have the broad provision. And that broad provision has to be honored under the Convention and the controlling law. Thank you, counsel. Thank you both for your arguments. I know we had a very confined time today, and I think you both did very well in expressing your arguments succinctly. So cases here will be submitted for argument.
judges: Thomas, Bybee, Benitez